## HART v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12390.   Decided May 31, 1932

Joseph C. Breitenstein, and John E. Elder, Cleveland, for plaintiff in error.

P. L. A. Lieghley, and Thomas A. Burke, Jr., Cleveland, for defendant in error.

VICKERY, J.

We have deemed it necessary to cite this much of the record and the matters leading up to the conviction by reason of the argument adduced by the plaintiff in error's counsel as to why there is error in this record that would warrant and compel the court to reverse the judgment.

In the trial of this action which took place in the September Term, 1931, the term in which all the three mentioned cases were tried and in which a conviction was had in each case, it is claimed that error was committed, both as to the way in which the sentence was imposed and as to the cross-examination and re-cross-examination in the matter of defense, and in the introduction in rebuttal of similar offenses.

Of course, a plea of not guilty threw the burden upon the State to prove beyond a reasonable doubt all the elements which constituted the crime.

The defendant really set up two defenses. In the judgment of the court they were probably not consistent, but assuming that they are not inconsistent: one of the defenses was that Hart did not carry this revolver, that it was not found in his possession.

From the record we learn that on the night in question, which was about ten minutes after twelve A. M., Hart somewhere in the neighborhood of Woodland Avenue and East 55th Street got into a cab and was to be taken out to East 105th street and Massie Avenue; that while driving from the place where he got into the cab to his destination there was a tie-up on the street railway and the driver of Hart's cab having gone on the wrong side of the street car on East 105th Street, was stopped by the policeman. The policeman, after being told by the driver that his passenger ordered him to go around the car because he was in a hurry, opened the door of the cab, and this automatically lit up the interior and there he found Hart with his foot covering a revolver on the floor of the cab, and in his pocket was an exploded cartridge which fitted this revolver.

One defense was, as already stated, that he did not have this gun in his possession, or, in other words, that he did not know that it was there. Inasmuch as he did not get upon the witness stand, the manner of proof was more by insinuation than by direct proof. The cab driver got on the stand in behalf of the defendant below and testified that he had two colored men in his cab prior to Hart's advent into the cab and that they had left just before Hart got in and that he did not examine the interior of the cab after they had left to see whether anything was on the floor or not and, therefore, it was sought by insinuation and suggestion to prove that the revolver may have been in the cab prior to Hart's entering therein. Hart did not get upon the witness stand to testify, and all that we have upon that proposition is the inference that might be drawn from the fact of the driver's testimony. This becomes a matter of some importance because one of the errors complained of in the record is that former arrests for carrying concealed weapons were introduced in rebuttal, at least one before and one after. The purpose of this undoubtedly was to show the character of Hart and that he was not averse at least to carrying a revolver, as bearing upon the question as to whether this revolver was under his control or in his possession, or close to him, at the time of his arrest, to overcome the inference that might be drawn from the driver's testimony.

In taking this whole matter into consideration, we do not think that permitting the prosecutor to refer to the other times when Hart was arrested for carrying concealed weapons was error on the part of the trial court; but that this was permissible, if not proper, under the circumstances, as bearing upon the question as to whether or not Hart knew of the proximity to his person of this revolver, and whether or not it was under his control and was his revolver. If it was, of course he was carrying or had control of a concealed weapon and had violated the statute. And now that brings me to the second defense.

The second defense, whether consistent or not, was in effect that Hart worked for a commission merchant by the name of Kyman Brothers, and that they had to deliver vegetables and other products to various customers, including Fisher Brothers, at various times, night and day and that there

had been a considerable loss by theft after they had delivered the products to the Fisher Brothers stores, and in order to protect the employer's rights the drivers of trucks and others employed to follow the trucks of which Hart was one, carried revolvers to protect the merchandise. The only testimony upon this question was that of a Mr. Goldman, who was for several years during a period covering the three offenses of Hart referred to, in charge of the work of distributing the vegetables and other market supplies to the Fisher Brothers who were their principal customers.

Now, of course, under the provisions of the statute, §13448-4 GC, if a party charged with carrying a revolver shows that he had a good reason for carrying such, the jury shall acquit the defendant. In the instant case Goldman says he and other officers of the company had permits to carry revolvers, but that Hart had none, and that he thought that the permits for him and his fellow officers were broad enough so that Hart and others might carry them.

Now if it is admitted, and I suppose it must be in order to make this latter defense available, that Hart was carrying a concealed weapon, but that he had the right to do so under the circumstances, when the State has proved he has a weapon in his control, the burden is upon the defendant then to prove that he was justified in carrying it, in order to comply with the statute which authorizes the jury to acquit.

This becomes important to remember for one of the complaints, and the most serious complaint of all is that the prosecutor cross-examined Mr. Goldman to such an extent that it tended to prejudice the jury and committed a wrong upon Hart, by calling attention to the various times that Hart had been called in by the police, and to the fact that he had been arrested for carrying concealed weapons at least once or twice other than this time.

Now it will be remembered that Hart knew all about this and did not take the witness stand. Had he taken the witness stand, the questions that were propounded to Mr. Goldman would undoubtedly, as admitted by learned counsel for Hart in argument, have been proper and germane to the subject. However, Hart not desiring to go upon the witness stand and relying for his defense and his right to carry a revolver upon the testimony of Mr. Goldman, Mr. Goldman was liable to be examined upon his knowledge of the situation and likewise his knowledge of the character of Hart and the former transactions of Hart, because if there was a good reason why Hart carried a revolver other than to protect himself by being out at night and delivering goods from his employer to the Fisher Brothers in the various stores, that would be a question germane to the issue and of which the jury should have cognizance; so it was perfectly proper, in the judgment of the court that these questions should have been asked. The fact of it is, in one particular instance, the door was opened wider than the prosecutor had dared to open it by the redirect examination of Goldman by the learned counsel for the plaintiff in error.

Ordinarily, of course, if a man does not get upon the witness stand himself and put his character or reputation in evidence, or he does not undertake to prove it by character witnesses, the State is barred from doing so. But there are instances: where any witness who testifies for the defendant presumes to have certain knowledge of the witnesses' whereabouts and movements, he can be interrogated at length with respect to other movements of the accused, for the purpose of testing the knowledge and ability to testify as to the whereabouts or character of the accused by the witness in question.

Now we think that when Hart refused to take the witness stand and relied upon the testimony of Goldman, and Goldman testified as to his knowledge of what Hart was carrying that revolver for, it was perfectly proper and in accordance with the rules of cross-examination that he might be interrogated so as to show that probably his knowledge was not very accurate, that the accused had other and ulterior motives for carrying the revolver; and we think all the questions, although they are carried pretty far sometimes, were of this character, and we do not think that it was prejudicial error on the part of the prosecutor to propound these questions under the circumstances.

It is claimed likewise that the court erred in imposing the sentence in this case. The penalty provided by statute for carrying concealed weapons is from one to three years in the penitentiary. Now in this series of cases, three in number, Hart was found guilty in each case. All the convictions took place during the same term of court and the trial court in assessing the penalty made the sentences consecutive; that, is, in the first conviction that was had, which was the last of the series of crimes charged in the indictments, he was sentenced for a period from one to three years in the penitentiary and when he was convicted upon the second offense, the one in question in this record, he was sentenced for a period from one to three years in the penitentiary likewise, and the court provided that this sentence should not begin to run until the conclusion

of the term of the former sentence; that is, the sentences were not to run concurrently, but one to succeed the other, and so when in the first in the series of events but the last to be tried, he was likewise found guilty and the court sentenced him for a period of from one to three years and sentenced him again at the close of the second sentence above referred to, it made a sentence aggregating for three offenses a period of from three to nine years. I believe it is claimed that instead of being eligible for parole at the end of one year, the minimum sentence in any one case, he could be not paroled until three years, that is, the aggregate of the minimum of the three offenses; whereas, if the sentences would run concurrently, he would be entitled to a parole at the close of one year.

That the court has the authority to do this is undoubted, based upon the decision of the Supreme Court in the case of **Williams v State, 18 Oh St 46.**

We have gone over this record and have considered all the errors complained of and we do not think that there was any such error in this record that would warrant a reviewing court in reversing the judgment; we think that the record unquestionably shows that this man was guilty of carrying a concealed weapon and that he had not sufficient legal reason for carrying it; and inasmuch as the burden was upon him to show that he had sufficient reason and the jury did not acquit him, we do not see that there is any reason for disturbing the judgment; and, therefore, the judgment is affirmed.

LEVINE, PJ, and WEYGANDT, J, concur.